OPINION. Tietjens, Judge: The parties agree that the only question here is when petitioner’s first taxable year began. If it began in 1941, as contended by petitioner, the Kevenue Act of 1941 would apply to the determination of petitioner’s excess profits tax; if in 1942, as argued by respondent, the higher rates of the Revenue Act of 1942 would be brought into play. Respondent’s position is that petitioner had no existence either in fact or in law until its charter was granted on February 7, 1942, and that its taxable year began on that date. On the other hand, petitioner points out that it actually established its business in 1941 when it was agreed to incorporate the enterprise if an order could be obtained from Amtorg Trading Corporation, followed by the hiring of Tama as manager, the renting of an office, the employing of draftsmen and other employees, the securing of the Amtorg order, designing the furnaces, and renting a factory, thereby accomplishing a substantial portion of the work which eventually produced the income on which petitioner is to be taxed. Accordingly, petitioner contends that the year 1941 is the important one tax-wise. We agree with respondent. The petitioner came into legal existence when its certificate of incorporation was filed on February 7,1942, Eveready Loan Co., 2 T. C. 1035, and while the events set forth above took place, we do not think it is established that they were done by or on behalf of the petitioner. In their dealings among themselves the prospective incorporators had in mind that petitioner would some day be organized and become an entity in fact and law. When they dealt with others, however, we can not find on this record that they ever dealt as agents for a proposed corporation or transacted any business in the name of the contemplated corporation. The all important Amtorg order was not taken in the name of the incorporators or of petitioner. As a matter of fact, neither the name of petitioner nor the state of its incorporation was decided upon until sometime in December 1941. The orders for important materials with which to complete the furnaces were placed with the suppliers in the name of Ajax Metal Company and not on behalf of the proposed incorporators or petitioner. The reasons for this may have been clear to Ajax Metal Company and the other proposed incorporators, but we can not find that any revelation was made to others or that persons other than those within the circle of proposed incorporators had any idea they were transacting business for the benefit or in the name of a corporation yet to be formed. The evidence points the other way. Outsiders were apparently unwilling to do business with the group until Ajax Metal Company was brought into the picture and contracted in its own name. During that part of 1941 when petitioner claims it was doing business it seems to us petitioner was hardly more than a gleam in the eyes of the proposed incorporators. We think this case distinguishable from Camp Wolters Land Co. v. Commissioner, 160 F. 2d 84, relied on primarily by petitioner. There the court stated: * * * the incorporators: (a) held themselves out as a corporation; (b) made deposits in the bank, acquired leases, wrote checks, bought land, executed leases, collected rent, borrowed money, accepted contributions — all in the name of the corporation. [Emphasis added.] No significant action here, unless it be the correspondence with the Office of Production Management inquiring in December 1941 whether a new preference rating certificate in the name of petitioner would be necessary or whether petitioner could use the old priority certificate standing in the name of Ajax Metal Company, was taken in the name of petitioner. Nor is there any controversy here over items of income or deductions, as in Camp Wolters Land Co. v. Commissioner, supra. Respondent has allowed all claimed deductions. We hold that respondent was correct in determining that petitioner’s taxable year began on February 7, 1942, the date of its incorporation. Decision will be entered for the respondent.